# Christian & Craft Co. v. Coleman.

## Action upon a Judgment.

1. *Pleading and practice; not necessary to give notice of the filing of plea of set-off.*—The interposition of the plea of set-off is not the institution of a new action in the sense that a formal notice of the filing of such plea can be served on the plaintiff, but is a mere mode of defense, of which the simple filing is notice to the plaintiff, and upon which, if he failed to reply within the time fixed by the rules of the court, a judgment by default may be taken against him; and the rendition of such judgment is conclusive that the plaintiff has failed to seasonably take issue upon or reply to such plea of set-off.

2. *Same; same.*—A judgment by default on the defendant's plea of set-off puts the plaintiff out of court, and he is not, therefore, entitled to any notice with reference to the execution of a writ of inquiry which is awarded upon such judgment.

3. *Judgment in foreign court; common law presumed to obtain.* In an action upon a judgment which was rendered by a foreign court, in the absence of evidence as to what was the law of the country in respect of the case in which the judgment was rendered, it will be presumed that the common law obtained in said country, and the integrity of the judgment sued on is to be tested by the laws of the forum in which the suit is brought.

4. *Same; presumption as to institution of suit.*—In an action brought upon a judgment rendered in a foreign country, where the records of the court wherein the judgment was rendered properly certified show that the suit was instituted by the parties against whom the judgment was rendered, and that a certain named solicitor of the court represented plaintiff in that action at its institution and for a considerable length of time thereafter, it will be presumed, for the purposes of the pending case, that said suit was instituted by the authority of the plaintiff therein.

5. *Action against corporation; admissibility of evidence as to change of name.*—Where, in an action upon a judgment rendered against a corporation, it is shown that after the rendition of said judgment said company changed its corporate name, the books of the probate office containing the proceed-

[Christian & Craft Co. v. Coleman.]

ings for the change of the name of said corporation are admissible in evidence for the purpose of showing such change in the name of the corporation.

6. *Action upon a judgment; duty of court to declare effect of record from said court.*—Where an action is brought upon a judgment rendered in a foreign court, it is the province of the court wherein such action is brought, to declare the construction and effect of the record certified from a foreign court.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This action is brought by the appellee, John Coleman, against the Christian & Craft Company; and counts upon a certain judgment which was rendered in favor of the plaintiff against the defendant in the Supreme Court of British Honduras, the complaint averring that said judgment was rendered in a suit which was brought against the present plaintiff by the present defendant suing as "The Christian & Craft Grocery Company," which was the defendant's corporate name at said time.

To this complaint, the defendant filed the plea of the general issue and the following special plea: "And now comes the defendant and by leave of the court first had pleads specially to the complaint and says *actio non* because the said alleged judgment was founded upon a counter claim filed by the plaintiff herein against this defendant in said cause to which the complaint refers and this defendant says that at the time of the matters and things alleged in said complaint it was without the jurisdiction of said Supreme Court of British Honduras, and that the alleged judgment was rendered without the service of due process of law upon this defendant and that it did not either in person or by attorney appear to the said counter claim upon which said judgment was so rendered."

To this special plea the plaintiff demurred upon the following grounds: 1. It fails to aver that the defendant in this suit did not in person or by attorney, institute the original suit in the Supreme Court of British Honduras in which such counter claim was filed. 2. No service of counter claim upon defendant or its attorneys

was necessary. 3. The record of said suit shows that a copy of such counter claim was served upon the solici-. tor of record of said suit. The demurrer to this special plea was sustained, to which ruling the defendant duly excepted.

Upon issue joined upon the plea of the general issue, the plaintiff introduced in evidence the original books of incorporation, which were kept in the office of the probate judge of Mobile county, for the purpose of showing that the present defendant, a corporation, was originally incorporated under the name of the "Christian & Craft Grocery Company," and that subsequently its name was changed to that of the "Christian and Craft Company," in accordance with the requirements of the statute. The defendant objected to the introduction of such evidence, upon the ground that it was immaterial and irrelevant to such cause, and the method proposed did not constitute the proper method of proving such matters. The court overruled this objection, allowed the books to be introduced in evidence, and to this ruling the defendant duly excepted.

Thereupon the plaintiff produced a certified copy of the record and proceedings in the Supreme Court of British Honduras, in the case of the Christian and Craft Grocery Co. v. John Coleman; said parties being the same ones as are parties to the pending suit. This transcript from said Supreme Court of British Honduras contained among others, the following:

1st. A writ of summons in the case entitled "a suit between Christian & Craft Grocery Company, plaintiffs and John Coleman, defendant." This writ of summons was a notice to the defendant in said suit, and the name of the defendant, and the institution of the suit against him by the Christian & Craft Grocery Company, and he was commanded to appear and defend said suit or judgment would be rendered against him. This writ was signed: "F. J. Maxwell, solicitor for plaintiffs." There was attached to this summons the following written statements: "This writ was issued by Frederick Mackenzie Maxwell of Regent Street, Belize, Solicitor for the plaintiffs who carry on business at 61, 63 and 65 Commerce Street, Mobile, Ala."

2d. An affidavit made by one James A. Thompson, stating that said writ had been duly served upon John Coleman.

3d. An appearance by Logan & Price, Solicitors for the defendant Coleman.

4th. The statement of claim by the plaintiff in said suit reciting that the claim was upon a promissory note and for goods, wares and chattels sold to the defendant, and seeking the foreclosure of a mortgage upon a schooner which was alleged to have been given by the defendant to the plaintiff for the security of said debt. This complaint is not signed by any one, but there is at the end thereof the following statement: "Delivered this 18th day of September, 1896, by Frederick Mackenzie Maxwell of Regent Street Belize, Solicitor of said plaintiffs."

5th. Defense and counter claim of the defendant in which the defendant admits an indebtedness but claims that the plaintiff is indebted to him in a larger amount and asks for judgment over against the plaintiff for the amount so due or alleged to be due.

6th. The affidavit of Henry Logan of the firm of Logan & Price, who were the defendant's solicitors, that the counter claim of the defendant had been filed on October 23, 1896, and on the same day there was duly delivered to F. M. Maxwell the solicitor of the plaintiffs, a copy of said defense and counter claim, and that no reply or defense to said counter claim had been filed or delivered by or on behalf of said plaintiffs. This affidavit was dated November 16, 1897, and at the same time there was filed with said affidavit a notice signed by Logan & Price as solicitors for the defendant, and on April, and on November 19, a motion would be made in said court for an order to show cause why the defendant was not entitled to a judgment upon his defense and counter claim.

7th. Motion by defendant for a judgment by default on the counter claim.

8th. An order by the register general fixing a day for the hearing of the motion.

9th. Affidavit of said F. M. Maxwell, that he had

made repeated efforts by letters to obtain instructions from the Christian & Craft Grocery Company as to the conduct of said suit, that the said plaintiffs had wholly neglected to give such instructions, or to answer said letters, and that on November 16, 1897, after informing R. H. Logan, of the firm of Logan & Price that he intended to withdraw from the case, did, on the same day, withdraw from the action, and no longer represented the plaintiffs. This affidavit was dated November 26, 1897.

10th. An affidavit of one of the attorneys of Coleman, that he had served on Maxwell, an order of the court requiring plaintiff to show cause why judgment by default should not be rendered against it.

11th. Order of the register general re-setting the motion for the judgment by default upon the counter claim, for December 8, 1897.

12th. Affidavit of Henry Tonsmeire of Mobile, Ala., U. S. A. reciting that on December 11, 1897, he delivered to the plaintiff in said cause copies of the documents hereinabove referred to, relating to motion for a judgment by default.

13th. A judgment by default against the plaintiff upon the counter claim of the defendant.

14th. A writ of inquiry directed to the chief justice and register general of said court, to ascertain the amount the defendant is entitled to recover against the plaintiff on his counter claim.

15th. Affidavits showing the delivery of the notice of the judgment by default and writ of inquiry to the Christian & Craft Company in Mobile.

16th. The minute entry showing that a verdict by the jury fixing the damage under the counter claim at $2,644.25.

17th. The final judgment in cause which was as follows: "The plaintiffs not having delivered any reply or defense to the counter claim and a writ of inquiry dated the 3d day of January, 1898, having been issued directed to the Chief Justice and to the Registrar General to assess the damages which the defendant was entitled to recover, and the said Chief Justice having on the 2d day of March, 1898, fixed the 7th day of March,

[Christian & Craft Co. v. Coleman.]

1898, for the execution of the said writ and the·said Chief Justice and the acting Register General having by their return dated 7th day of March, 1898, returned that the said damages have been assessed at $2,644.25. And on the said 7th day of March, 1898, Mr. Logan of counsel for the defendant having moved for judgment and the said motion having been by the said Chief Justice adjourned until the 11th day of March, 1898. Now on motion before the court for judgment on behalf of the defendant and on reading the statement of claim ·delivered the 18th day of September, 1896, the defense and counter claim delivered the 23d day of October, 1896, the said writ of inquiry and return thereto and the affidavit of Henry Tonsmeire of due service of notice of the execution of the said writ of inquiry filed herein the 17th day of January, 1898, the court having ordered that judgment be entered for the defendant for $1,053.83 and his costs of the action and counter claim. Therefore, it is adjudged that the defendant do recover against the plaintiff $1,053.83, and his costs of this action and counter claim to be taxed."

This transcript of the records and proceedings in the Supreme Court of British Honduras was duly certified to as being "a full, true and correct transcript of the records and proceedings had in a certain cause, therein lately pending, wherein Christian & Craft Grocery Company were plaintiffs and John Coleman was defendant as the same appears upon the records of said court." This certificate was signed by "H. D. Phillips, acting Register General and Clerk of the Supreme Court of British Honduras." There then follows the certificate of William John Anderson, Chief Justice of the Supreme Court of British Honduras, that H. D. Phillips was the acting Register and Clerk of the Supreme Court of British Honduras. There then follows a certificate signed "F. J. Newton, administering the Government of British Honduras," and duly indented with the seal of the colony of Honduras, which recited that the foregoing was a full, true and correct transcript of the records and proceedings in said cause, and that Henry D. Phillips was acting registrar and clerk of the Supreme Court of British

Honduras, and that Sir William John Anderson, Knight, was the Chief Justice of said Supreme Court.

The defendant objected to the introduction of this transcript of the records and proceedings of the Supreme Court of British Honduras, on the following grounds:

"1st. Because the same was not properly and duly certified. 2d. Because the same was not certified by the proper officers. 3d. Because the same purports to show a judgment rendered against the Christian & Craft Grocery Company upon a counter claim filed by John Coleman in a suit which appears therefrom to have been brought by the Christian & Craft Grocery Company, and fails to show that there was ever served upon the Christian & Craft Grocery Company any due process of law by which it was brought in to answer to said counter claim. 4th. Because the judgment is shown thereby to have been rendered upon the counter claim filed by the plaintiff in an action, whereas it did not appear either that the Christian & Craft Grocery Company had been served with any due process of law thereon, or that the original action in which the counter claim had been filed had been brought by authority of the defendant in this cause. 5th. Because neither the notice shown to have been served upon Mr. Maxwell or the notice served upon the Christian & Craft Grocery Company, in Mobile, Alabama, was sufficient to confer jurisdiction upon the Supreme Court of British Honduras to render a judgment against the defendant upon the counter claim shown thereby. 6th. Because the same was irrelevant and immaterial to the issue in the cause." The court overruled these objections, allowed the transcript to be introduced in evidence, and to this ruling the defendant duly excepted.

Upon this evidence the plaintiff rested his case. The defendant introduced as a witness one John Craft, who testified that he was the vice-president of the Christian & Craft Company, the defendant in the present suit; that the plaintiff was indebted to the defendant in a certain amount, which indebtedness was evidenced by a note which had never been paid; "that said note was turned over to Mr. Baker for collection; that Mr. Baker

had taken said note to British Honduras and had there died;" and that he, the witness, had made diligent search for said note in places where it was likely to be found, but had been unable to find it; "that the witness knew of no suit having been instituted by the defendant against the plaintiff in British Honduras."

This was all the evidence; and the court in its general charge to the jury instructed them, among other things, that the said transcript which was introduced in evidence "established a sufficient judgment in favor of the plaintiff against the defendant to entitle it to recover on account thereof." The defendant separately excepted to the giving of this portion of the court's general charge.

The defendant requested the court to give to the jury, among others the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that if they believe all the evidence in this cause, they must find a verdict for the defendant against the plaintiff for whatever amount they may believe from the evidence that the plaintiff became indebted to the defendant, while the plaintiff was in Mobile." (2.) "The court charges the jury that if they believe all of the evidence in this cause, they must find a verdict for the defendant against the plaintiff for the difference between whatever amount they may believe from the evidence that the plaintiff became indebted to the defendant, and the amount sued for by the plaintiff." (3.) "The court charges the jury that they must find for the defendant, unless they believe from the evidence that the Supreme Court of British Honduras rendered a final judgment against the Christian & Craft Company upon the debt set up in the set-off in this case." (4.) "The court charges the jury that if they believe from the evidence in this case that the defendant did not employ Mr. Maxwell to bring suit for them in British Honduras, then they must find for the defendant for its full claim."

There were verdict and judgment for the plaintiff, assessing his recovery at $1,457.40. From this judgment the defendant appeals, and assigns the rendition thereof as error.

GREGORY L. & H. T. SMITH, for appellant.—The first and most interesting question presented by this record is whether or not a judgment by default can be rendered upon a counter claim without any notice of the filing thereof, or rather, whether such a judgment can be said to rest upon due process of law. The particular transcript here offered in evidence shows affirmatively that it includes all of the proceedings which were had in the Supreme Court of British Honduras, and, therefore, that there was no jurisdiction attained over the parties, upon which an affirmative judgment against the plaintiff could rest, unless the proceedings shown thereby constitute such process. A recovery can never be had upon a foreign judgment unless the party against whom the judgment was rendered has either voluntarily submitted himself to the jurisdiction of the court in regard to the matter which it has undertaken to adjudicate, or unless he has been duly brought before the court by the service of *due process of law*. *Windsor v. McVeigh,* 93 U. S. 274; *Scott v. McNeal,* 154 U. S. 46; *Thompson v. Whitman,* 18 Wal. 460; *Rose v. Himnely,* 4 Cranch, 241. And this even where the only plea is the general issue.—*Foster v. Glazener,* 27 Ala. 391. It will be observed that the court which is said to have rendered the judgment, proceeded upon the theory that the counter claim set up by the defendant constituted a new suit in which there must necessarily be either a voluntary appearance or the service of process. *D'Arcy v. Ketchum,* 11 How. 165; *Pennoyer v. Neff,* 95 U. S. 720; Black on Judgment, § 837; *L. & N. R. R. Co. v. Nash,* 118 Ala. 477.

Is any notice of a counter claim necessary? There is, so far as we can see, no principle which distinguishes in this matter between the rule at law and the rule in equity. The necessity for process is, in both cases, demanded by the same principles of natural justice, and guaranteed by the same constitutional provision, and that the same service of process is necessary upon a counter claim as upon an original action, seems to be settled both at law and in equity—5 Encyc. of Pr. & Pr. 658 and note; *Washington R. R. v.*

[Christian & Craft Co. v. Coleman.]

*Bradley,* 10 Wall. 302; *Smith v. Woolfolk,* 115 U. S. 148; *Cullem v. Erwin,* 4 Ala. 452; *Cummings v. Gill,* 6 Ala. 562; *Beally v. Smith,* 4 Yeates 102; *Latimer v. Hoydon,* 5 S. & R. 514; *Lewis v. Culberson,* 11 S. & R. 48; *Irwin v. Pattes,* 3 Watts 48; *Kerr v. Bennett,* 67 Nev. 564; *Reed v. Aiken,* 14 Ark. 475; *Brady v. Hill,* 1 Mo. 315.

Was the service upon Maxwell efficacious? Speaking of this matter, the Supreme Court of the United States has said: "conceding that this kind of service, if executed according to the law, were good under the statute of Arkansas, which they were not, they would have been but substituted service, and could not support a personal decree against Woolfolk and wife."—*Smith v. Woolfolk,* 115 U. S. 148; *Pennoyer v. Neff,* 95 U. S. 479; *Harness v. Hyde,* 98 U. S. 479; *Brooklyn v. Ins. Co.,* 99 U. S. 362. Whether service upon an attorney can support affirmative relief upon a counter claim without voluntary appearance was the sole question presented and the question was fully reviewed, in *Fidelity T. & S. Co. v. Mob. St. Rwy. Co.,* 53 Fed. 850. This identical question seems to be fully covered by the case of the *L. & N. R. R. Co. v. Nash,* 118 Ala. 477.

Indeed substituted service upon an attorney is never available without an order of court authorizing such service, and where notice cannot be "due process of law" without some authorization or law for such notice. There must be an established mode of process.—*Smith v. Woolfolk,* 115 U. S. 149; *Hagar v. Reclamation, &c.,* 111 U. S. 708.

JOHN E. MITCHELL and HENRY TONSMEIRE, *contra.* If a person select, as plaintiff, the tribunal of a foreign country as the one in which he would sue, he cannot afterwards say that the judgment of that tribunal is not binding upon him.—*Hilton v. Guyot,* 159 U. S. 170; *Schibsby v. Westenholz,* L. R., 6 Q. B. 155; Freeman on Judgment, (3d ed.) 628.

A set-off or counter claim is a plea, and all of the authorities which we have examined treat it as such.—3 Blackstone Com., 304; *Castleman v. Jeffries,* 60 Ala. 380; *Lawton v. Ricketts,* 104 Ala. 430; Code, 1896, § 3732. A set-off is not the commencement of an "action" and laws governing "actions" are not to be extended to set-offs.—22 Amer. & Eng. Enc. Law, 227-8 and note.

The right of set-off belongs to the remedy, and is therefore to be governed by the law of the place where the action is brought.—22 Enc. Law, 238. The presumption is that the proceedings in a foreign court are conducted in acordance with the law and practice of the forum.—*Roach v. Privett,* 90 Ala. 394; *Dunstan v. Higgins,* 138 N. Y. 70; *Rapalje v. Emery,* 2 Dallas 231.

The record of incorporation, or change of name, is such a paper, transcript of which is properly received in evidence. Whenever a transcript of a public record is admissible in evidence, the record itself is likewise legal evidence.—*Stevenson v. Moody,* 85 Ala. 35; *Carrville v. House,* 6 Ala. 711; *Lawson v. Orear,* 4 Ala. 158; 1 Greenleaf Evidence, § 484.

The transcript was properly authenticated.—2 Black on Judgments, § 849; Freeman on Judgments, § 414; 1 Greenleaf Evidence, § 514; 8 Enc. Law (1st ed.), p. 438; 12 Enc. Law (1st ed.) p. 149 f.; *Church v. Hubbart,* 2 Cranch, 238; *Andrews v. Flack,* 88 Ala. 294.

The presumption is that the foreign court had jurisdiction over the person and subject-matter.—*Slaughter v. Cunningham,* 24 Ala. 269; *Dozier v. Joyce,* 8 Porter, 393; *Kohn v. Hass,* 95 Ala. 478; *Com. Court v. Thompson,* 18 Ala. 694; *Pettus v. McClannahan,* 52 Ala. 59; *Gun v. Peakes,* 36 Minn, 177; *Bruckman v. Tausig,* 7 Colo. 561; 11 Enc. Pl. & Pr., 1131, 2, 3; Freeman on Judgments, § 453; *Baker v. Palmer,* 83 Ill. 571. The jurisdiction of the Supreme Court of Honduras over the person of the Christian & Craft Grocery Company could have been impeached only by plea, and the burden of proving such plea would have been upon the party

pleading it.—*Hunt v. Mayfield,* 2 Stewart, 429; *Andrews v. Flack,* 88 Ala. 299; *Foster v. Glazenor,* 27 Ala. 398; *Dunston v. Higgins,* 138 N. Y. 70; s c., 20 L. R. A., 681 and notes; 2 Black, Judgments, § 838; Freeman, Judgments, § 453.

The same rule as to presumptions in favor of judgments of sister States extends to foreign judgments. *Lazier v. Westcott,* 26 N. Y. 146; *Bruckman v. Tausig,* 7 Colo. 561.

McCLELLAN, C. J.—We are of opinion that the record of the Supreme Court of British Honduras put in evidence below shows that that court had jurisdiction of Christian-Craft Grocery Co. for the purpose of a valid judgment by default against that company on the plea of set-off or counter-claim interposed by Coleman, the defendant in that action. On general principles of pleading and jurisdiction, the interposition of a plea of set-off is not the institution of a new action in the sense that formal notice of it must be served on the plaintiff, but is a mere mode of defense of which the filing is notice to him and upon which, if he fail to reply within the time fixed by the rules of the court, a judgment by default may be taken against him; the rendition of such judgment being conclusive that he has failed to seasonably take issue upon or reply to the plea.—6 Ency. Pl. & Pr. p. 76; *St. Louis v. Clemens,* 36 Mo. 467 *et seq; Aston v. Wallace,* 43 Ind. 468; *Aymar v. Chace,* 12 Barb. (N. Y.) 301; *Heebner v. Shepard,* 63 N. W. Rep. 892. But the record of the judgment introduced below and shown here in the transcript shows affirmatively that a copy of the defendant's plea of set-off was served upon plaintiff's solicitor in the case, and hence that plaintiff had actual notice of the interposition by the defendant of the claim upon which the latter took judgment by default. In any possible view of the case, therefore, there is no room for saying, assuming that plaintiff brought the suit and was represented therein by solicitor Maxwell, that the Supreme Court of British Honduras was without personal jurisdiction of the plaintiff to render the judgment by default against him.

[Christian & Craft Co. v. Coleman.]

Upon general common law principles, which we are to presume obtained in the British colony of Honduras, the judgment by default on defendant's plea of set-off put the plaintiff out of court, and he was not entitled to any notice with reference to the execution of the writ of inquiry which was thereupon awarded. If there was any statute or efficacious rule of court requiring such notice in the courts of Honduras no evidence thereof was adduced below. The fact that defendant's solicitors in a way gave notice of the execution of the writ to the plaintiff is not evidence to impeach the judgment that such notice was necessary to jurisdiction for the assessment of damages. And, moreover, this notice being unnecessary according to the general course and principles of the law to the investiture of jurisdiction in the tribunal assessing the damages, any sort of notice which the statute laws of the forum or the rules of the particular court may prescribe must be held to be sufficient notice, as, for instances, notice by publication, or by mail, or by delivery of a copy by an unofficial person in a foreign jurisdiction. So that if we are to conclude that notice was necessary of the execution of the writ of inquiry from the fact that notice was given by unofficial service of copies of the writ, orders etc. on the plaintiff in Mobile, we are also to assume that that was the notice and the service thereof prescribed, to the further conclusion that the Honduras court thereby acquired jurisdiction to execute the writ and assess the damages. Nor would a different result ensue were we to pretermit the indulgence of the presumption that the common law prevails in British Honduras. In such case, there being no evidence as to what the law of that country is in the respect under consideration, we are to test the integrity of this judgment by the laws of the forum in which it is being tested, the laws of Alabama; and, no notice being necessary under our laws, to regard what was done or attempted to be done toward giving the Christian-Craft Grocery Co. notice of the execution of the writ of inquiry, as shown by the record of the judgment, as acts of the merest supererogation.

The record of the Supreme Court of British Hondu-

ras properly certified to the court below and now before us, shows that a suit was instituted in that court by the Christian-Craft Grocery Company against John Coleman, and that F. M. Maxwell a solicitor of that court represented the plaintiff in that action at its institution and for a considerable length of time afterwards. For all the purposes of the present case this shows *prima facie* at least that Maxwell instituted that suit by authority of the plaintiff therein. And there is nothing in the present record tending to rebut this *prima facie* showing . To the contrary, the only witness introduced by the defendant below, John Craft, vice-president of the corporation, testified that the claim upon which the suit in Honduras had been instituted was turned over to Mr. Baker for collection and that Baker had taken the note to British Honduras—for collection, of course—and there died; all which goes to sustain the record, if that were necessary, or admissible, since the institution of suit is the ordinary method of collecting debts. The further testimony of this witness that "he knew of no suit having been instituted by the defendant against the plaintiff in British Honduras," has no legitimate tendency to show that Baker acting for the Christian-Craft Grocery Co., or even that that company directly, had not employed Maxwell to institute and prosecute the suit in which Coleman on his plea of set-off and counter claim (which is nothing more than our statutory plea of set-off under which a recovery over may be had) recovered the judgment now sued on against the plaintiff in that action.

Of course it was necessary for the plaintiff to prove that the "Christian & Craft Company" sued on the judgment put in evidence was the "Christian & Craft Grocery Company" against which that judgment was rendered; and the court committed no error in allowing the fact to be proved by the introduction of the *original record* from the probate office showing that the Christian-Craft Grocery Company had since the rendition of the judgment changed its name to the "Christian & Craft Company."—Code, §§ 1284, 1816; *Willingham v. State,* 104 Ala. 59, 60; *Stevenson v. Moody,* 85 Ala. 33, 35.

[Hudson v. Scott, et al.]

The construction and effect of the record certified from the Supreme Court of British Honduras was to be declared by the court, and was properly declared in that portion of the general charge to which an exception was reserved.

The rulings of the trial court were in harmony with what we have said above, and its judgment must be affirmed.

A 'firmed.